Douglas **COLLINS**, Appellant,

v.

**STATE** of Texas, Appellee.

No. 13–81–264–CR.

Court of Appeals of Texas, Corpus Christi.

Dec. 30, 1982.

Concurring Opinion Jan. 3, 1983.

Donald Dewberry, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

A Harris County jury found Douglas Collins guilty of burglary of a building with intent to commit theft and assessed his punishment at imprisonment for fourteen years. The appellant calls to our attention several errors which occurred in the punishment phase of the trial. We reverse.

In his motion for new trial, appellant alleged that the jurors discussed the number of years Collins would actually serve in jail. This motion was supported by the affidavit of Charlie Rockemore, a juror, who stated that for the greater part of their deliberation the jurors spoke of the length of the sentence in relation to the actual time served. At the hearing on the motion for new trial, Rockemore was the sole witness. He testified that the jury deliberated for 45 minutes before reaching agreement on punishment. Rockemore stated that all the jurors discussed how much of his sentence the appellant would serve by making calculations such as, "If we give him 14 years, he can parole out in five."

In his first ground of error, the appellant contends that discussion of the parole law by the jury was misconduct which deprived him of a fair trial. Tex.Code Crim.Proc. Ann. Art. 40.03 (Vernon 1979) provides, "New trials, in cases of felony, shall be granted the defendant for the following causes: .... Where, from the misconduct !of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial...."

Jury discussion of the parole law is always misconduct. *Sanders v. State,* 580 S.W.2d 349, 351 (Tex.Cr.App.1979). Whether this misconduct mandates reversal depends upon the particular facts of each case. *Heredia v. State,* 528 S.W.2d 847, 853 (Tex.Cr.App.1975). We listed in *Vasquez v. State,* 632 S.W.2d 180, 183 (Tex.App.—Corpus Christi 1982, no petition) the criteria which a court may consider in determining whether to reverse when misconduct has occurred. Those factors which have the most bearing on this case include: the duration and extent of the discussion; whether admonishments by the court caused such discussion to cease; and the proximity of the discussion to the final vote.

In the case before us, it is clear that the jury talked extensively about the effect of parole laws on the sentence. It is also apparent that the jurors disregarded the court's instruction in the charge which prohibited the jury's consideration of how long the appellant would serve. Finally, it appears that their statements permeated the deliberations and did not cease until the final vote. We conclude that the jury misconduct denied the appellant a fair trial. See *Munroe v. State,* 637 S.W.2d 475 (Tex. Cr.app.1982).

The judgment of the trial court is reversed and the cause is remanded.

NYE, Chief Justice, concurring.

I concur in the opinion of this Court because the rule is now well established in Texas that a conviction cannot stand where jury discussion of parole denies the accused a fair and impartial trial.

The appellate courts of this State have failed, however, to apply a consistent standard in determining how extensive the jury's discussion must be, or what impact the discussion must have, before a defendant is denied a fair and impartial trial. *Munroe v. State,* 637 S.W.2d 475 (Tex.Cr. App.1982). In seeking to clarify the conflicting standards, the Court of Criminal Appeals in *Munroe* held that a defendant is denied a fair and impartial trial when there is a showing that even a single juror voted for an increased punishment because of a discussion of parole possibilities.

Since that decision, this Court has seen with increasing frequency, cases alleging reversible error as the result of a jury's discussion of parole. With our Court's attention focused on this problem, I think that it is appropriate to review how this issue is handled in other jurisdictions, where juries assess punishment and hence may adversely affect an accused by discussing parole. I have found virtually unanimous agreement with the proposition that parole is not a proper topic of jury consideration, although it is not always reversible error. See: *Hinton v. Commonwealth,* 219 Va. 492, 247 S.E.2d 704 (Va.1978); *Feggins v. State,* 265 Ind. 674, 359 N.E.2d 517 (Ind.1977); *State v. Johnson,* 298 N.C. 355, 259 S.E.2d 752 (N.C.1979); *Wright v. State,* 617 P.2d 1354 (Okla.Cr.App.1979); *Kendrick v. State,* 55 Ala.App. 11, 312 So.2d 583 (Ala.Cr.App. 1975); *Keith v. State,* 191 Tenn. 456, 234 S.W.2d 993 (Tenn.1950); *Ashby v. State,* 271 Ark. 239, 607 S.W.2d 675 (Ark.1980); But see: *Summers v. State,* 86 Nev. 210, 467 P.2d 98 (Nev.1970).

It is also well settled in most jurisdictions that if the jury asks the court to explain parole law the trial court must instruct the jury that parole is not to be considered in determining the length of punishment. It is reversible error if the trial court does not give this instruction or if it explains the operation of parole. *Andrews v. State,* 251 Ark. 279, 472 S.W.2d 86 (Ark.1971); *State v. Brooks,* 271 S.C. 355, 247 S.E.2d 436 (S.C. 1978); See 12 A.L.R. 832.

The rules in other jurisdictions noted above are consistent with the rule in Texas. Nonetheless, I have been unable to find a single jurisdiction which follows the Texas rule requiring the reversal of a conviction where discussions between jurors in the sanctity of the jury room cause even one juror to vote for an increased punishment. There are several reasons that are apparent for this result.

In most jurisdictions, the issue of jury misconduct resulting from a discussion of parole does not even appear. This is so because most jurisdictions prohibit a juror from impeaching his verdict, by either affidavit or testimony, concerning matters which occurred in the jury room, unless those matters involved outside interference (attempted bribery, etc.) or unless improper extraneous prejudicial information (new evidence, etc.) was brought to the jury's attention. *Montgomery v. State,* 556 S.W.2d 559 (Tenn.Cr.App.1977); See also 24 C.J.S. Criminal Law, sec. 1494. Even in states where juries assess punishment, this prohibition extends to such matters as discussions of parole. *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (N.C.1979); *Garraway v. State,* 337 So.2d 1349 (Ala.Cr.App.1976); *Cortez v. State,* 415 P.2d 196 (Okla.Cr.App. 1966); *Pettyjohn v. State,* 3 Tenn.Cr.App. 441, 463 S.W.2d 148 (Tenn.Cr.App.1971). The rule against a juror being allowed to impeach the verdict is interpreted so strictly in some states that evidence is not admissible even to show that a quotient verdict was used to arrive at punishment. *State v. Simmons,* 563 S.W.2d 91 (Mo.Ct.App.1978).

Article 40.03(8) Tex.Code Crim.Pro.Ann. (Vernon 1979) specifically permits the use of a juror's affidavit to show jury misconduct. This may be a mistake and should be repealed. Only in Texas does it appear that a juror can give evidence that the jury improperly discussed parole. *Munroe,* supra. This statute permits evidence concern-

ing misconduct which occurred only among members of the jury within the confines of the jury room. Among those states in which a jury assesses punishment, Texas appears to stand alone in this regard. Fed. Rule of Evidence, Rule 606(b) is consistent with the majority position.

While jury discussion of parole is considered improper in most jurisdictions, it has not been condemned in every state. In *Ashby v. State*, 271 Ark. 239, 607 S.W.2d 675 (Ark.1980), the Supreme Court of Arkansas said, "It would be highly unrealistic for this court to think that jurors do not consider the possibility of parole in arriving at a sentence in a criminal case. The outward expression of that by a juror is not grounds for a new trial." In holding that no error was committed, the Court reasoned that an Arkansas statute permitting jurors to consider all evidence in the light of "your own observations and experiences in the affairs of life," allowed parole to be discussed among the jurors.

It is completely unrealistic to think that Texas jurors do not consider parole when assessing punishment. From our experience, it appears that many jurors are aware that a defendant can be paroled after satisfactorily serving a portion of the sentence assessed; and, while other jurors are less familiar with the operation of parole, they at least have some vague knowledge that early release is possible under various circumstances. It is unrealistic that reversible error occurs only in Texas when this common knowledge manifests itself in an open expression or discussion of parole possibilities, for the same harm befalls an accused when a juror votes for an increased punishment because he knows all about parole although parole has not actually been discussed by other members of the jury.

It is worthwhile to point out several factors which either directly or indirectly contribute to discussions regarding parole. First, in Texas as in several other states, the jury has a vital role in assessing punishment. This, too, may be a mistake and should be repealed. If the jury had no punishment assessing function, the topic of parole would rarely come to mind. It is unrealistic to believe that the same punishment for the same crime would be uniform throughout the length and breadth of this great state. Where one defendant might receive a lengthy sentence for a specific crime in one section of this state, another defendant in another section of this state might receive a very small sentence for the same crime. In Texas civil law, if a verdict on damage is excessive, the trial court or the appellate court can remit that amount that is excessive—not so in sentencing in criminal law. If the sentence is excessive and no other error is found, the sentence must stand. Many advocate, as I, that the difficult task of sentencing should be left to an experienced trial judge. The trial judge is, and can be kept, knowledgeable as to the proper sentence for a particular crime for a specific individual. This would eliminate many injustices such as the one here demonstrated and others that occur daily throughout our state.

Second, Texas has no present method of allowing the trial court or the appellate courts to reduce an excessive punishment assessed by the jury. If such a method were implemented by the Legislature, this State could retain its present policy of allowing jurors to testify about matters occurring in the jury room without endangering the validity of an otherwise valid conviction. Under the latter suggestion, once a showing had been made that the jury violated its duty by discussing inappropriate matters (i.e., parole, etc.), the responsibility of setting an appropriate punishment would shift to the trial court or to the appellate court when the ground of error was sustained on appeal. This would prevent the entire retrial of defendants whose guilt has been established and were harmed only in the punishment phase of a trial.

Third, Texas law offers the jury a wide range of punishment options. If more definite punishment options or even fixed terms for certain crimes were utilized, a jury's desire to calculate parole eligibility dates would be reduced. The present law which allows the jury to assess punishment within

a wide range of years increases the impact that parole might have on the amount of time that a defendant would have to spend in prison. In the past, in some Texas cities, the jurors' knowledge of the parole system has been demonstrated by sentences of 100, 500 or even 1,000 years.

It is nearly impossible to ask jurors to discuss their feelings on punishment and to assess punishment while at the same time asking them to ignore the real impact of their decision. In order to reduce the number of cases alleging error from this form of jury misconduct, we must either adopt the majority rule and prohibit the impeachment of verdicts in this situation, or modify some of our trial procedures to reduce the likelihood that these errors will occur. In any event, the Legislature should make a serious study of the injustices that are occurring daily in our state and enact legislation that guarantees a fair trial to the accused and to the people of Texas that the State represents.