STATE of Missouri, Respondent,

·v.

Bill J. BRUCE, Appellant.

No. 45706.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 24, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 15, 1983.

Frank A. Anzalone, E. Eugene Overall,
Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green,
Asst. Atty. Gen., Jefferson City, George
Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Judge.

Defendant was convicted by a jury of the
offenses of kidnapping, a violation of
§ 565.110, RSMo.1978 and forcible rape, a
violation of § 566.030, RSMo.Supp.1982.
He was sentenced to a term of 30 years as a
persistent offender for the kidnapping conviction and a consecutive term of 50 years,
without the possibility of parole, as a persistent sexual offender for the rape conviction. We affirm.

The state's evidence established that on
March 12, 1981, at about 3:30 p.m., the

victim, age 12, was walking from school to her piano lesson. As she passed a van, defendant engaged her in conversation. Defendant raised his shirt, exposed a knife and forced the victim into the van. Defendant then entered the van and drove away. A witness in an adjoining house observed the victim's abduction and it was reported to the police. Defendant parked the van near a theater in the area and got into the back of the van with the victim, discarded the knife, pulled down the victim's underwear and forced her to have intercourse with him. Following the act of intercourse, defendant and victim had some conversation, during which he asked her not to tell anyone and apologized to her. Defendant then drove a short distance and let the victim out near the intersection where the incident began. A police officer, who heard the report of the abduction, was directly behind defendant's van when the victim was released. Defendant was then arrested. The defense was insanity.

On appeal, defendant's principal point of error is that the court erred in denying his motion for a new trial because Juror Norman Caldwell concealed information during the voir dire examination. During voir dire, the prosecuting attorney asked a series of questions, two of which are pertinent to defendant's complaints:

> Now, has anybody had any experience, personally or any member of their family, or in the history of their family, that would present a problem with sitting on this jury and being fair and impartial to both the State and Mr. Bruce? We're both entitled to a fair and impartial trial.
>
> I take it by your silence that nothing like that has occurred.
>
> I'll just ask this one general question: Has anyone ever been the victim of a crime that would make it impossible or difficult for you to be fair—and probably a number of you have been victims of a crime of one type or another, but only raise your hand if having been a victim of a crime it would make it difficult or impossible for you to be fair and impartial in this particular case?
>
> All right. I take it by your silence that none of you have.

During the jury's deliberations, a note signed by the foreman was sent to the judge which stated: "We have found one juror's [sic] whose daughter was raped, and we do not feel he'll be fair. Could we call the alternate?" The court noted that the alternate had been discharged and separated from the jury. The court then examined the questions that had been asked during voir dire and stated, "Gentlemen, no one asked had any member of the panel's family been victims of a crime." The defense attorney requested a mistrial which the court overruled.

In the hearing on defendant's motion for new trial, Juror Caldwell testified that his daughter was a victim of rape at the time she was 13 years of age; that it had occurred about 3 years before; and there had been no prosecution. He further testified that if he had been asked whether a member of his family had been the victim of a crime, he would have answered the question truthfully. The court stated there was no evidence to support a finding that the juror intentionally concealed the information and denied the motion for a new trial.

■ It is axiomatic that a prospective juror has a duty to answer all questions during voir dire examination fully, fairly and truthfully, so the juror's qualifications may be determined and so challenges may be intelligently exercised. *State v. Scruggs*, 551 S.W.2d 306, 308 (Mo.App.1977). It is further settled that the qualification of a juror should be determined before the trial begins so the parties must develop such information before the juror is sworn. An exception is made "where it is shown that matters which might establish prejudice or work a disqualification were actually gone into on the voir dire, and false answers were given, or deception otherwise practiced...." *State v. Crawford*, 416 S.W.2d 178, 191 (Mo.1967). The trial court may consider this question in a motion for a new trial, either upon oral testimony taken at a hearing on the motion, or by affidavit, because the defendant is not to be left without a remedy when the disqualification of the juror was one which he could not have discovered earlier by due diligence.

*State v. Crawford,* 416 S.W.2d at 191 (Mo. 1967); *State v. Hermann,* 283 S.W.2d 617, 619 (Mo.1955). We review the trial court's decision on this issue only to determine whether there was an abuse of discretion. *State v. Robinson,* 484 S.W.2d 186, 188 (Mo. 1972).

■ Here, we can find no circumstances justifying overturning the trial court's denial of defendant's motion for a new trial on the basis of concealment. Juror Caldwell was asked whether any member of his family had "any experience ... that would present a problem with sitting on this jury and being fair and impartial to both the State and Mr. Bruce?" The answer to this question is, of course, a subjective determination which each juror had to make for himself. Juror Caldwell's silence indicated that this incident did not keep him from being fair and impartial. There was no competent evidence adduced establishing that this incident kept the juror from being fair and impartial.[1] If defendant wanted to determine whether any member of the panel's family had been the victim of a crime regardless of whether the juror felt it would affect him, that question could have been asked. *See e.g. State v. Smith,* 649 S.W.2d 417 (Mo.banc 1983) at p. 427.

We have carefully reviewed the entire record and conclude that the trial court did not abuse its discretion in failing to find that a juror concealed information.

■ Defendant also asserts the trial court erred in allowing a guard to testify to statements made by defendant to his mother. At the end of the first day of trial, defendant spoke with his mother in the presence of Fred West, a guard. West testified the next day that the defendant told his mother, "He didn't think it was that serious of an offense. He just only raped the girl; didn't hurt her, or anything." The guard further testified that defendant stated, "he'd make the State pay for what we get." There is no parent-child testimonial privilege in Missouri. Defendant, citing *People v. Fitzgerald,* 101 Misc.2d 172, 422

N.Y.S.2d 309, 312 (1979), urges that we adopt one. We decline to do so. That is a matter for the legislature, not the courts.

■ Defendant asserts the trial court erred in allowing Officer West and William Breeding to testify on rebuttal on the issue of defendant's sanity. Evidence that explains, counteracts, repels or disproves the evidence offered by defendant, whether directly or indirectly, is proper rebuttal. The scope of rebuttal testimony rests within the sound discretion of the trial court and will not be reversed unless there is an abuse of discretion. *State v. Williams,* 442 S.W.2d 61, 65 (Mo.banc 1968); *State v. Cameron,* 604 S.W.2d 653, 658 (Mo.App.1980). We have reviewed the testimony and conclude the trial court did not abuse its discretion in this regard.

Affirmed.

CRANDALL, P.J., and CRIST, J., concur.

---

1. The trial court properly excluded testimony of one of the jurors offered by defendant at the hearing on the motion for new trial as an improper attempt to impeach the verdict. *State v. Simmons,* 563 S.W.2d 91, 92 (Mo.App.1978).